# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| RODNEY LAMONT PHILLIPS, ) | No. 10-3024-01-CR-S-RED |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress [Doc. # 15], to which the United States responded. [Doc. # 16]. The matter was set for an evidentiary hearing, which was held before the undersigned on June 23, 2010. The defendant was present with counsel, Assistant Federal Public Defender David R. Mercer, and the United States was represented by Timothy A. Garrison, Assistant United States Attorney.

The government first called Greene County Sheriff's Sergeant Christian Conrad. On March 10, 2010, he came into contact with defendant as a result of a traffic stop. It was about 11:00 p.m. when he stopped defendant because he did not have a license plate on the front or back of his vehicle. When the officer made contact with defendant, he had exited his vehicle. Sergeant Conrad identified himself, called defendant back, asked to speak to him, and asked for his driver's license. Defendant said his driver's license was revoked, after just a few seconds into the conversation. He did provide identification. He also directed the officer's attention to a temporary tag on the back window of his vehicle. This occurred after the officer had found out that defendant's driver's

1

license was revoked. He did not ask him if his license was revoked. Rather, he asked him for some identification and his driver's license. When he checked on the status of the license with dispatch, he found out that defendant had multiple offenses for driving with a revoked or suspended license. Because of multiple convictions, that is a felony under Missouri law. When he went back to speak to him, defendant was on a cell phone, calling his cousin to come pick up the vehicle, which was his. The officer allowed him to finish the call. Sergeant Conrad testified that he then asked defendant to step out of the vehicle. Defendant asked if he was under arrest, and the officer informed him that he was, that he would be taken to Greene County Jail, and that it was a book and release offense. The officer attempted to take defendant into custody. At that point, defendant tried to take off his coat and secure it inside the car. The officer told him he would take care of everything, and to put his hands behind his back. Defendant again refused to be physically restrained, and ran off on foot. The officer had to chase after him.

At this point in the hearing, the officer offered a copy of a video from his dashboard camera, which was in his patrol vehicle on the evening of the stop. The tape depicted the events in question, including the officer turning around and following defendant's vehicle, parking in a convenience store lot, defendant gesturing towards the temporary tag, the officer walking up to him, and the officer conducting a pat down search of defendant. His arrest was also depicted.

On cross examination, Sergeant Conrad testified that he did not notice defendant's vehicle to be speeding, but that he could observe, even if there were a combined speed on both vehicles of 60 miles per hour, the back portion of the vehicle in the dark and see the absence of a license plate. He did not, however, notice that there was a temporary tag in the rear window. He agreed that the sole purpose of the stop was to determine if the vehicle had license plates, and that there were no

2

violations of law other than his suspicions about the license plates.  He could not see who was driving the car when he observed the vehicle on Scenic Street.  As he crested the hill, he could see defendant step out of the vehicle and walk away.   When he came to a stop in the parking lot, he parked his vehicle at an angle pointing to the side and rear of defendant's vehicle.  His headlights were on and were pointing at the rear window of the Camaro.  His emergency lights were also on and flashing.  He agreed that the convenience store parking lot was well-lit.  He did not recall that defendant pointed directly at the temporary tag as the officer approached him.  He stated that the curvature of the back windshield made the tag hard to read, although he did not indicate this in his report.  Once he got out of his vehicle and was standing in the parking lot, he noticed the temporary tag.   Sergeant Conrad admitted that he did not go look at the temporary tag until two  minutes and thirty seconds into the stop. He had already engaged defendant in conversation and patted him down before looking at the temporary tag.  He admitted that he pulled into the lot quickly, activated his lights, and drove straight at the Camaro and defendant, who was standing next to it.  He stated that he walked right up to defendant.  For a certain period of time his focus was on defendant and not the temporary tag.  He admitted that he did not look at the tag until later. When he called into dispatch he did not do anything to try to verify a temporary plate, because he believes that temporary tag numbers are not accessible to law enforcement.  On the video, it was observed that he patted defendant down.  The officer indicated that he did this because defendant had indicated that he had a revoked driver's license and he was standing outside the vehicle.  He did this for officer safety.

On redirect examination, the officer testified that the first 60 seconds depicted on the video was before he turned on his emergency lights. Therefore, only 90 seconds had elapsed before he looked at the temporary tag. In one hundred percent of stops, he asks for a driver's license.  If an

3

individual indicates they don't have a license, he inquires further.

It is defendant's contention that the traffic stop and seizure were illegal. He moves to suppress all evidence and any custodial statements made. He asserts that there is "a strong argument that there was a valid basis for initiating this traffic stop. However, the constitutional infirmity of the seizure of Mr. Phillips is not found in the <u>initiation</u> of the traffic stop, but in the <u>continuation</u> of the seizure of Mr. Phillips after the original purpose of the traffic stop was resolved." Defendant's Motion to Suppress, at 4. [Emphasis in original]. He contends that an initially valid seizure can become illegal if the seizure is unreasonably extended without reasonable, articulable suspicion of criminal activity sufficient to expand the investigation. It is defendant's position that, assuming that the initial basis for the traffic stop was valid, the continued seizure was unconstitutionally invalid because defendant was seized beyond the completion of the purpose of the stop, which was to check for valid license plates; that he did not feel free to leave; and Sergeant Conrad lack reasonable suspicion of other criminal activity sufficient to prolong defendant's detention. He asserts that the reason for the stop was concluded the moment Sergeant Conrad realized, or should have realized, that there was a valid temporary tag in the back window of the Camaro. He reiterates that the temporary tag was directly in front of the officer's vehicle, was illuminated by his headlights and the lights from the convenience store, and was pointed out by defendant. Therefore, it is defendant's position that it was unreasonable for the officer to continue the seizure of defendant past the moment when it was obvious that there was no valid traffic violation.

It is the government's position that the stop of defendant's vehicle was lawful. After the lawful stop, the investigating officer was authorized to complete routine tasks, such as asking defendant for his driver's license. The government contends that, in response to the officer's

4

routine request for identification, defendant made an incriminating statement, which gave rise to reasonable suspicion that a violation had been committed other than the one suspected at the initiation of the stop, and which justified lengthening defendant's detention.

After careful review of the evidence before the Court, including the testimony at the suppression hearing and the video, the Court finds that it must be recommended that defendant's motion to suppress be denied. Initially, it is worth noting the defendant conceded that the initial traffic stop was valid. Under Eighth Circuit law, there is no basis for suppression after a lawful traffic stop and a routine request for identification that yields incriminating information. United States v. Cloud, 594 F.3d 1042, 1043-44 (8th Cir. 2010). Despite defendant's arguments, the Court believes that it cannot be said that the stop in this case was unreasonably extended by the officer's routine request for identification. As established at the suppression hearing, the time that elapsed from the stop until the officer approached the temporary tag was only slightly over two minutes, and it was actually only 90 seconds from the time the officer turned on his emergency lights until he observed the temporary tag. While it could be argued that the officer could have examined the temporary tag before he asked for identification, the law does not require him to do so. In Cloud, the Eighth Circuit noted that the officer did see a temporary plate upon approaching the vehicle, but nonetheless, he asked the three occupants for identification. While it is true that the officer thought there might be an issue of drugs or alcohol affecting the driving, the Court clearly held that an officer, after a lawful traffic stop, "may complete routine tasks," including asking for identification, and running a computer check if the individual consents to the request for identification. 594 F.3d at 1044. Defendant asserts that a reasonable person in defendant's position would not have felt free to leave because the officer entered the parking lot at a rapid pace, parked close to defendant's

vehicle in a perpendicular fashion, had his emergency lights activated, exited his cruiser in an abrupt manner, and walked directly to defendant. In that regard, this case is no different that the vast majority of traffic stops in which a "lawful detention may be prolonged for a reasonable time without violating the Fourth Amendment if complications arise while checking identification." Id. at 1045. In fact, the Eighth Circuit specifically held in Cloud that ten minutes was not an unreasonably long traffic stop, but rather, that whether the length of a stop is reasonable depends on the facts of each case. "[T]here is no per se time limit." Id. In this case, the time that elapsed was actually less than that of a typical valid traffic stop because the officer inadvertently gleaned incriminating information within seconds by merely asking defendant for identification. Regardless of defendant's reliance on United States v. Gallardo, 495 F.3d 982 (8th Cir. 2007), that case does not support his argument. The facts before this Court present a situation where the officer discovered, within seconds, incriminating information that provided reasonable suspicion of other criminal activity sufficient to prolong defendant's detention. The Court finds that the evidence establishes that no constitutional violation occurred, and that it should be recommended that the motion to suppress be denied.

Based on the foregoing, the Court finds that it must be recommended that defendant's Motion to Suppress be denied.

Therefore, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress be denied.

      /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 7/15/10